IN RE HUFF.

*nady,* 14 App. D. C. 1; Woerner, Administration, p. 384; 11 Am. & Eng. Enc. Law, 2d ed. 907; *Andrews* v. *Administrators,* 7 Ohio St. 143; *Mumpers's Appeal,* 3 Watts & S. 441; *Brown* v. *Vinyard,* Bail. Eq. (S. C.) 450; *Kelly* v. *Davis,* 37 Miss. 107; *Glass* v. *Ramsay,* 9 Gill, 456; *Gorton* v. *Perkins,* 63 Md. 589; *Miller* v. *Gehr,* 91 Md. 709; *Harrison* v. *Clark,* 95 Md. 308; *Tilghman* v. *France,* 99 Md. 611; *Decker* v. *Fahrenholtz,* 107 Md. 515; *French* v. *Wash. County Home,* 115 Md. 309; *McIntire* v. *McIntire,* 14 App. D. C. 337; *Wills* v. *Spraggin,* 3 Gratt. 569; *Hamilton* v. *Shillington,* 19 App. D. C. 268; *Kengla* v. *Randall,* 22 App. D. C. 463; *Carroll* v. *Carroll,* 16 How. 287; *Dodd* v. *Anderson,* 197 N. Y. 466; *Re Soulard,* 141 Mo. 642; *Doan* v. *Herod,* 56 Ind. App. 663; *Re Reimer,* 159 Pa. 222; *Sheetz's Appeal,* 100 Pa. 197; *Whitaker's Estate,* 38 Phila. Leg. Int. 402; *Bergdoll's Estate,* 11 Pa. Dist. R. 699; *Moyer* v. *Swygert,* 125 Ill. 276; *Shaw* v. *Moderwell,* 104 Ill. 64; *Brown* v. *Eggleston,* 53 Conn. 110; *Olmstead's Estate,* 120 Cal. 447; *Re Hite,* 155 Cal. 448; *Brown* v. *Corey,* 134 Mass. 249.

---

# IN RE HUFF.

---

PATENTS; PATENTABILITY.

1. A new combination and arrangement of elements productive of a new and useful result was *held* to be shown in an application for a

patent for an improvement relating to engine starters, consisting of a device involving a single unit system in which the dynamo is used as a starting motor and also as a generator for recharging the battery, where the result accomplished by the applicant is shown to be the displacement of the admittedly complicated and inherently defective overrunning clutch of the prior art, in a single unit system, by a belt drive, so arranged that when the motor gear connections are made and the dynamo energized to start the engine, the belt connection slips or yields, and when the engine drives the motor the gear connections are out of mesh and the belt enables the engine to drive the dynamo as a generator; and it was further *held*, that such invention was not anticipated by a yielding belt drive as applied to a generator in a two unit system.

2. A doubt as to the patentability of an article will be resolved in favor of the applicant. (Following *Re Thomson*, 26 App. D. C. 419; *Re Eastwood*, 33 App. D. C. 291; *Re Harbeck*, 39 App. D. C. 556.)

No. 1164. Patent Appeals. Submitted November 11, 1918. Decided January 6, 1919.

HEARING on an appeal from the decision of the Commissioner of Patents rejecting the claims of an application for a patent. *Affirmed* as to claims 1, 2, and 3; and *reversed* as to claims 4, 5, and 6.

The facts are stated in the opinion.

*Mr. R. A. Parker, Mr. Calvin T. Milans, Mr. J. H. Milans,* and *Mr. E. J. Stoddard* for the appellant.

*Mr. Theodore A. Hostetler* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decision of the Patent Office refusing a patent for an improvement relating to engine starters, and defined in six claims, of which we here reproduce the 1st, 3d, and 4th:

"1. The process of operating a starting and charging dynamo consisting in permanently connecting the same with the engine

to be started at a proper relative speed for the charging operation by a yielding connection whereby said dynamo may be operated to perform its charging function, and temporarily connecting said dynamo to the engine by an unyielding connection at a different relative speed to perform its starting function, said yielding connection being adapted to resist relative motion of the connected parts with an approximately constant force that shall not prevent the action of the dynamo to start the engine."

"3. The combination of an engine having a cooling fan, a belt actuated by said engine to operate said fan, a starting dynamo for said engine, a pulley connected with said dynamo and adapted to actuate the same at one relative speed, and having a permanent yielding engagement with said belt, means for temporarily connecting said dynamo to said engine at a different relative speed to start the same and for releasing said connection, said yielding connection being adapated to resist relative motion of the connected parts with an approximately constant force that shall not prevent the action of the dynamo to start the engine, a storage battery, means for connecting said storage battery to said dynamo so that said dynamo shall be driven by said battery when the dynamo is in driving relation with the engine, and so that said storage battery shall be charged by said dynamo when the connection by which the dynamo is adapted to drive the engine is interrupted."

"4. In an engine starter, an electric starting and charging dynamo, a permanent yielding engagement between said dynamo and engine at one relative speed, and means for temporarily connecting said dynamo to said engine at a different relative speed to drive the same, said yielding connection being adapted to resist relative motion of the connected parts with an approximately constant force that shall not prevent the action of the dynamo to start the engine."

It is common knowledge that the application of outside power is necessary to start an internal combustion engine, such as that used in automobiles, because it will not function until set in motion. Formerly these engines were started manually, but,

fortunately, so-called "self-starters" now are in general use. The apparatus for producing this result consists of a dynamo and storage battery combined in such a way that the charged storage battery will deliver a current at a very high rate to the dynamo, thus enabling the dynamo to act powerfully for a short time and give the engine the initial strokes necessary to start it functioning as a motor. When the engine is started and generates power it rotates the armature of the dynamo, producing a current which is sent through the storage battery at a comparatively low rate to recharge the battery. The primary examiner says: "The subject-matter of the appealed claims involves a dynamo which may be operated as a motor to start an internal combustion engine and also as a generator driven by the engine. There is provided the usual battery for energizing the dynamo as a motor for starting purposes and which is charged by the dynamo when driven as a generator by the engine. Specifically the claims relate to the combination of the battery, dynamo and engine and two-gear connection between the dynamo and engine. One of these sets of gearing is brought into operation by means of a pedal for connecting the dynamo to the engine as a motor, and when the engine starts this gearing is disconnected. The gear connection between the engine and the dynamo for the generator drive consists of a belt drive. The belt is connected around three pulleys, one on the engine shaft and one on the generator, and the other is the ordinary fan pulley. When the motor gear connections are made and the dynamo energized to start the engine, the belt connection slips or yields and the dynamo operating as a motor drives the engine. When the engine is driving the motor gear connections are disconnected, and the engine drives the dynamo as a generator through the belt drive."

It will be noted that the applicant has displaced by a belt drive the overrunning clutch which, as experience has demonstrated, possesses certain inherent defects. The examiner was of opinion "that the mere substitution of the belt drive shown in each of the letter patents for the generator connection of Cousins, Coleman, or Kettering" did not involve invention,

especially as such a drive, in the examiner's view, was disclosed in each of the patents to Leonard and Churchward. The Examiners in Chief were of opinion that claims 2 to 6, inclusive, are not met by the Coleman, Cousins, and Kettering patents, but that, *"in view of that to Churchward,"* the rejection of these claims was proper. They said: "It is thought that the yielding pulley drive of Churchward is the equivalent of the ball-clutch drive of Kettering, and that no invention would be involved in its substitution for the latter in the Kettering structure. Or, viewed from another angle, there would be no invention in providing the Churchward engine with the Kettering starting device."

The Assistant Commissioner, speaking of the ruling of the Examiners in Chief, said: "I see no error in the decision. It is clear that the defect of the overrunning clutch used by Kettering was known; and certainly all the properties and functions of a slipping belt drive were known and well illustrated by the Churchward patent. The only possible room for invention, then, would lie in the conception that the disadvantage of wasting energy while the slipping belt drive is working in opposition to the positive gear, was more than offset by the advantage of using the simpler and cheaper form of gearing in place of the overrunning clutch. This is a mere matter of test; it requires nothing but skill."

In view of the ruling of the Board of Examiners in Chief, which was adopted by the Assistant Commissioner, to the effect that the Coleman, Kettering, and Cousins patents do not meet claims 2 to 6, inclusive, we may pass at once to the Churchward patent, dated Setember 14, 1915. Churchward says that the object of his invention is to provide "means for operating a dynamo electric machine at substantially a constant speed by power transmitted from the shaft of an internal combustion or other engine rotating at a variable speed." Later on he says: "I have found in practice that the interposition of the fan between the crank shaft pulley and the generator shaft pulley causes the belt to slip upon the crank shaft pulley so the arma-

ture will rotate at substantially a constant speed under varying speeds of the crank shaft pulley."

The claims of the issue are drawn to cover the idea above expressed. It is quite clear that the Churchward patent has reference to a generator. Certain it is that starting mechanism is neither mentioned in the specification nor shown in the drawing. In other words, the Churchward device is used in a two-unit system, and only one, that is, the generator unit, is shown or described. Applicant's device involves a single-unit system in which the dynamo is used as a starting motor and also as a generator for recharging the battery. To accomplish this there must be a double connection at different relative speeds,—and Churchward does not disclose such a device. What the applicant really has done, therefore, has been to displace the admittedly complicated and inherently defective overrunning clutch of the prior art, in a single-unit system, by a belt drive so arranged that when the motor gear connections are made and the dynamo energized to start the engine, this belt connection slips or yields, and when the engine drives the motor the gear connections are out of mesh and the belt enables the engine to drive the dynamo as a generator. That this device possesses utility is beyond dispute, and we are impressed with applicant's contention that something more than mere mechanical ability was involved in this combination. Many things appear easy after they have been explained, and doubtless many a man has wondered why he failed to think of some apparently simple device or improvement that yielded a fortune to the one who did, and revolutionized an industry. The simple fact is that the average person sees things as they are, and he who has originality of vision enabling him to visualize defects and the means of overcoming them should receive adequate reward. We are of the view that applicant shows a new combination and arrangement of elements which is productive of a new and useful result, and, therefore, that he has made an invention. But, even were there a doubt, the benefit of it would be given him. *Re Thompson,* 26 App. D. C. 419;

*Re Eastwood,* 33 App. D. C. 291; *Re Harbeck,* 39 App. D. C. 556.

Coming to the claims of the issue, we agree with the Patent Office that applicant has not invented a process, and therefore should not be allowed claim 1. We are also of the view that the language of claims 2 and 3 does not sufficiently differentiate applicant's device from that of Churchward. Claims 4, 5, and 6, however, should be allowed, and the decision is reversed as to those claims.

*Affirmed* as to claims 1, 2, and 3; and *reversed* as to claims 4, 5, and 6.